IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| ANDREA MARTINEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 19-6135 |
| | ) |
| | ) **JURY TRIAL DEMANDED** |
| UNITED STATES OF AMERICA, EVERETT CHASE, in his individual capacity, and RONNET SASSE, in her individual capacity, | ) ) ) ) |
| | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

1. Plaintiff, Andrea Martinez, seeks judgment against Defendants, under the United States Constitution pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for excessive force and unlawful search and seizure in violation of the Fourth Amendment, and against Everett Chase and Ronnet Sasse, in their individual capacities, pursuant to the Federal Tort Claims Act (FTCA), for their torts of assault, battery, false arrest, false imprisonment, and negligent infliction of emotional distress for approaching her under color of law while she attempted to accompany her three-year-old client into an ICE Enforcement and Removal Operations Facility so that he could be reunited with his mother—who is also Martinez's client—before being deported to Honduras. The officers used excessive force in pushing Martinez to the ground causing serious injury and emotional trauma. They also refused medical treatment, illegally detained Martinez inside the facility against her will, and illegally seized and searched her cellular phone.

*Jurisdiction and Venue*

2. This Court has jurisdiction over the subject matter of this Complaint under the Fourth Amendment to the United States Constitution, the Federal Tort Claims Act (FTCA), and 28 U.S.C. §§ 1331 and 1346(b).

3. This Court has authority to issue declaratory and injunctive relief under 28 U.S.C. §§ 2201 & 2202, and under its inherent equitable powers.

4. On November 15, 2018, Administrative Tort Claims were submitted by Plaintiff to the United States Department of Homeland Security and United States Immigration and Customs Enforcement. Six months have passed since the filing of the administrative claims without action by the agencies. Plaintiff has, therefore, exhausted all administrative remedies under 28 U.S.C. § 2675(a).

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and L.R. 3.2(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Platte County, Missouri, which is located in this judicial district.

6. Venue is proper in the St. Joseph Division pursuant to L.R. 3.2(a)(1)(B).

*Parties*

7. Plaintiff, Andrea Martinez, is a resident of the State of Missouri, and maintains an immigration law practice in Kansas City, Missouri.

8. Defendant Everett Chase is an employee and commissioned law enforcement officer of Immigration and Customs Enforcement (ICE). He is sued in his individual capacity only. Defendant Chase acted under color of state law at all times relevant to this complaint.

2

9. Defendant Ronnet Sasse is an employee and commissioned law enforcement officer of Immigration and Customs Enforcement. She is sued in her individual capacity only. Defendant Sasse acted under color of state law at all times relevant to this complaint.

10. Defendant United States of America is the appropriate defendant under the FTCA.

*Facts*

11. Plaintiff Andrea Martinez is an attorney licensed to practice law in the State of Missouri. She practices in the area of immigration law.

12. Martinez represents Kenia Bautista-Mayorga and her three-year-old son, N.B.M., who came to America in 2016 seeking asylum and fleeing from the abuse of Bautista-Mayorga's partner, who is N.B.M.'s father and was a police officer in Honduras and had tried to take N.B.M. from her. Bautista-Mayorga and her son settled in Texas to start a new life.

13. Following a traffic stop in Missouri in May 2018, Bautista-Mayorga, who was then approximately five months pregnant, was detained in the Platte County Detention Center in Platte City, Missouri. While she was detained, she was separated from N.B.M. During this time, he remained first in Missouri and then later in Texas with Luis Alfredo Diaz Inestroza, Bautista-Mayorga's partner with whom she was expecting a child.

14. Martinez and her associate attorney began representing Bautista-Mayorga and N.B.M. pro bono after seeing a plea for attorneys to represent a pregnant woman being detained by ICE.

15. On June 25, 2018, Martinez instructed Diaz Inestroza to bring N.B.M. from Texas to Kansas City so that N.B.M. could be reunited with his mother in the event of an immediate deportation to Honduras of both Bautista-Mayorga and N.B.M. following an anticipated decision in an appeal pending at the Board of Immigration Appeals (BIA).

3

16. On June 25, 2018, a request for an emergency stay of N.B.M. and Bautista-Mayorga's deportation was denied.

17. As soon as she was informed by the BIA of the denial, Martinez and her associate attorney spoke with ICE Officer Paul Dechir at the ICE Enforcement and Removal Operations Facility in Kansas City to discuss the logistics of reuniting N.B.M. with his mother for deportation.

18. Martinez and her associate attorney were instructed by Officer Dechir that they were to meet ICE agents at 3:30 a.m. on June 26, 2018, in the ICE Enforcement and Removal Operations Facility parking lot to hand N.B.M. over to his mother, who would be in an ICE van waiting for them.

19. Martinez and her associate attorney were told by Officer Dechir that there would be a car seat for N.B.M., Bautista-Mayorga would not be handcuffed, Diaz Inestroza would not be detained upon arriving at the ICE facility with N.B.M., and the family would be allowed to say goodbye before Bautista-Mayorga and N.B.M. were deported.

20. On June 25-26, 2018, Diaz Inestroza was accompanied by a Netflix film crew that was filming a documentary featuring the family's story.

21. When Martinez and N.B.M., her three-year-old client, arrived at the ICE Enforcement and Removal Operations Bond Acceptance Facility parking lot around 3:30 a.m., there was no van waiting for them.

22. At approximately 3:40 a.m., Martinez received a phone call from ICE Officer Ronnet Sasse asking her to bring Diaz Inestroza and N.B.M. inside the facility to be reunited because of light rain. Martinez responded to Sasse by informing her that they preferred to maintain the plan of reuniting the family in the parking lot. The call ended.

23. Sasse and ICE Officer Everett Chase then turned on the lights in the ICE facility entrance and stood outside near the entrance.

24. Martinez and her associate attorney approached Sasse and Chase without N.B.M. to discuss the logistics of reuniting N.B.M. with his mother. Martinez and her associate attorney were informed that they had to come inside the facility with N.B.M. to reunite him with his mother. Bautista-Mayorga could not be seen by Martinez at this time inside the facility, but the ICE officers indicated that she was, in fact, in the building.

25. Chase then asked Martinez to identify herself, which she did.

26. It became clear to Martinez at this point that no van was going to arrive in the parking lot for the purposes of reunification of N.B.M. and his mother as originally agreed upon.

27. As Martinez and her associate attorney went back to Martinez's car in the parking lot where Diaz Inestroza was holding N.B.M. to talk to Diaz Inestroza about the changed reunification plan, they were followed into the parking lot by Chase. Chase stood with Martinez and her associate attorney as they spoke to Diaz Inestroza, who was holding N.B.M. Chase then interrupted the attorneys' conversation and grabbed Diaz Inestroza's arm and forcibly walked him toward the facility entrance.

28. Chase—who was armed—was visibly angry.

29. Diaz Inestroza never resisted Officer Chase and walked calmly to the facility entrance while still holding N.B.M. in his arms.

30. Martinez and her associate attorney asked Chase to let Diaz Inestroza depart and allow the attorneys to take N.B.M. to his mother.

31. Chase did not respond to this request and continued to force Diaz Inestroza toward the ICE facility.

5

32. Sasse was waiting at the front entrance to the ICE facility and holding the door open. Chase pushed Diaz Inestroza and N.B.M. into the facility, then entered behind them. Martinez was walking in behind Chase.

33. Without warning, after Diaz Inestroza and N.B.M. were inside the facility, Chase physically and purposefully backed into Martinez and her associate attorney as they attempted to accompany their client into the facility. Sasse and Chase then pushed Martinez to the ground and locked the doors to the facility, preventing Martinez from accompanying her three-year-old client.

34. Diaz Inestroza and N.B.M. were standing just inside the entrance and witnessed Martinez being pushed to the ground and blocked from entering the facility.

35. Sasse and Chase's pushing of Martinez fractured her right foot, tore her pants, and caused lacerations, bleeding, and a concussion.

36. Martinez was helped to her feet by her associate attorney and was then forced to wait outside the front door of the ICE facility while her clients were now inside with the ICE officers.

37. Seconds after Sasse and Chase pushed Martinez to the ground, Chase reappeared at the entrance, unlocked the door, motioned for onlookers to back away, and then opened the door and instructed Martinez to enter the facility. Chase refused to allow Martinez's associate attorney entry in the building despite being told that both Martinez and her associate attorney represented N.B.M and Bautista-Mayorga.

38. Upon Martinez entering the building, Chase took her to a conference room where Diaz Inestroza, Bautista-Mayorga, and N.B.M. were hugging and crying.

6

39. Chase then instructed Sasse to take Bautista-Mayorga and N.B.M. to the airport for deportation. Although Martinez had luggage that contained clothes for N.B.M., Bautista-Mayorga, and the baby that Bautista-Mayorga was expecting in her car at the ICE facility, Chase refused to allow anyone to obtain the luggage, and Bautista-Mayorga and N.B.M. were deported without any belongings except for the clothes they were wearing.

40. Diaz Inestroza remained in the conference room with Martinez.

41. Chase then called Federal Protective Services (FPS) officers and instructed them to bring backup and handcuffs because, he falsely claimed, Martinez had tried to trespass on federal property and enter an ICE facility without permission.

42. Following this phone call to FPS, Martinez believed she was being detained and did not believe she was free to leave. Based on Chase's actions and statements, Martinez believed that she was under arrest, despite the fact that she had committed no crime.

43. Martinez then attempted to use her own cell phone to call the police. As Martinez started to call the police, Chase took the phone from her hand and prohibited her from using it to call the police. Chase then attempted to unlock the phone. He was unsuccessful because it was password protected but he was able to, and did, read incoming text messages that showed up on the locked screen. Chase tried to locate a recording device on Martinez's phone.

44. It was also at this time that Martinez began to realize the seriousness of her injuries and noticed that she had torn her pants and was bleeding from her left knee and ankle.

45. Martinez asked Chase for a first aid kit but was told by Chase that her injuries were not serious enough to warrant a first aid kit.

46. Chase also refused to provide any information related to the deportation of Bautista-Mayorga and N.B.M., including when their flight would arrive in Honduras. The only

7

information provided to Diaz Inestroza was that the flight would arrive at the San Pedro Sula airport.

47. Martinez asked for an ice pack when she began to notice the swelling in her right foot. Martinez also asked for medical assistance when she realized her foot might be broken. Chase initially refused all medical assistance.

48. Martinez was detained for 35-45 minutes. At times during this detention at the ICE facility, Chase left Martinez and Diaz Inestroza in the conference room and locked the door behind him so they could not leave.

49. During one of the instances when Martinez and Diaz Inestroza were in the conference room alone, Martinez—whose phone had been returned to her possession—called the police. Martinez told the police that she was being detained against her will by an ICE officer and her location. Martinez quickly ended this call when Chase re-entered the conference room.

50. Chase had returned with an ice pack for her foot. Martinez again told Chase that she needed to go to a hospital for medical attention.

51. Chase was on his phone and asked Martinez to spell her name and provide her date of birth and social security number. Martinez provided the spelling of her name and date of birth but refused to provide her social security number. Chase then left the room again for approximately ten minutes.

52. Martinez then texted her associate attorney and asked her to call the police and an ambulance, which she did.

53. Approximately ten minutes later, Martinez's associate attorney informed her that an ambulance and the police had arrived and were at the front door of the facility. Diaz Inestroza

8

and Martinez were locked inside the conference room and could not leave to get medical attention for Martinez.

54. Martinez could hear law enforcement and emergency medical technicians banging on the front door, but they still could not gain entry for about another five minutes.

55. They were eventually allowed entry and came inside the locked conference room with a stretcher for Martinez.

56. Martinez was placed onto the stretcher.

57. Martinez was taken by ambulance to St. Luke's Northland Hospital.

58. X-rays taken at the hospital confirmed that Martinez fractured her right foot. She was given a boot and crutches and referred to an orthopedic specialist for further treatment.

59. Martinez was discharged from the emergency room at approximately 7 a.m. on Tuesday, June 26, 2018.

60. Martinez's injury was confirmed by an orthopedist and he approved her treatment plan. The orthopedist also referred Martinez to get an MRI of her cervical spine. Martinez got an MRI on June 28, 2019.

61. In the days following the incident, Martinez felt foggy-headed and dizzy and vomited.

62. Martinez visited urgent care on Friday, June 29, 2018, where she was diagnosed with a concussion. Martinez also had an infection in her left ankle wound that required an antibiotic prescription.

63. Martinez had several follow-up appointments for her physical injuries.

64. Martinez also sought and continues to receive counseling for the psychological and emotional trauma she suffered at the hands of Chase and Sasse.

9

65. On June 27, 2019, Martinez and her associate attorney filed a police report at the Kansas City Police Department North Patrol Station. The police kept Martinez's torn pants and shoes as evidence.

**COUNT I**
*Federal Constitutional Claim against Defendants Chase and Sasse*
*Excessive Force*

66. Plaintiff incorporates herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

67. The use of excessive force is a violation of the individual's Fourth Amendment rights against unreasonable seizures of the person.

68. An officer cannot use more force than is objectively reasonable under the particular circumstances.

69. On June 26, 2018, Defendants Chase and Sasse used objectively unreasonable force against Plaintiff.

70. A reasonable and prudent officer would have known that, under the circumstances, physically pushing Plaintiff, an attorney accompanying a three-year-old client into a federal facility to reunite the child with his mother, and causing Plaintiff to fall onto the ground was excessive.

71. Defendants Chase and Sasse intentionally injured Plaintiff without just cause.

72. Plaintiff's right to be free of excessive force was clearly established at the time of the incident.

73. Defendants Chase and Sasse were acting under color of law in subjecting Plaintiff to the violation of her rights as secured by the Fourth Amendment.

74. Plaintiff suffered damages, including physical injury and pain and emotional trauma, as a result of Sasse and Chase's use of excessive force against her.

## COUNT II
*Federal Constitutional Claim against Defendant Chase*
*Unlawful Search and Seizure*

75. Plaintiff incorporates herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

76. Defendant Chase unreasonably detained Plaintiff inside the ICE facility for 35-45 minutes.

77. Defendant Chase unreasonably seized and searched Plaintiff's cell phone.

78. Defendant Chase had no probable cause or any reasonable suspicion to detain Plaintiff for any length of time.

79. Defendant Chase had no probable cause to seize or search Plaintiff's cell phone.

80. Plaintiff did not consent to Defendant Chase taking or searching her cell phone.

81. Defendant Chase was acting under color of law in subjecting Plaintiff to the violation of her rights as secured by the Fourth Amendment.

82. Plaintiff suffered damages as a result of Defendant Chase's actions.

## COUNT III
*FTCA Claim against the United States of America*
*Assault and Battery*

83. Plaintiff incorporates herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

84. Defendants Chase and Sasse physically and purposefully backed into Plaintiff to prevent entry into the ICE facility, after previously instructing her to enter, and then intentionally pushed Plaintiff to the ground.

85. Defendant Chase refused to provide Plaintiff with a first aid kit and refused multiple requests for medical attention by Plaintiff.

86. Plaintiff was detained with her injuries and without medical attention for 35-45 minutes.

87. Defendants Chase and Sasse used more force than was reasonably necessary.

88. Defendants Sasse and Chase's use of force caused Plaintiff to suffer serious bodily harm.

89. Defendants Sasse and Chase's use of force was intentional, purposeful, and reckless.

90. Plaintiff suffered damages, including physical injury and pain and emotional trauma, as a result of Defendants Sasse and Chase's actions.

## COUNT IV
*FTCA Claim against the United States of America*
*False Imprisonment and False Arrest*

91. Plaintiff incorporates herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

92. Plaintiff was detained inside a conference room at the ICE facility without her consent and against her will for 35-45 minutes by Officer Chase.

93. Plaintiff was detained at the ICE facility after her client had left the building pursuant to a deportation order.

94. Plaintiff was locked in a conference room and not free to leave.

95. Plaintiff was detained unlawfully.

96. Plaintiff suffered damages, including physical injury and pain and emotional trauma, as a result of Officer Chase's illegal detention and arrest of Martinez.

# COUNT V
*FTCA Claim against the United States of America*
*Negligent Infliction of Emotional Distress*

97. Plaintiff incorporates herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

98. Defendants Chase and Sasse refused to allow Plaintiff to accompany her three-year-old client into an ICE facility where he was to be reunited with his mother—who is also Plaintiff's client—before being deported to Honduras.

99. Defendant Chase refused to allow N.B.M. or his mother to take any luggage with them, even though the luggage was in Plaintiff's car at the ICE facility.

100. Defendant Chase physically and purposefully backed into Plaintiff to prevent entry into the ICE facility and then pushed Plaintiff to the ground.

101. Defendant Chase refused to provide Plaintiff with a first aid kit and refused multiple requests for medical attention by Plaintiff.

102. Defendants Sasse and Chase's actions involved an unreasonable risk to Plaintiff that Defendants Sasse and Chase should have realized.

103. Plaintiff was detained with her injuries and without medical attention for 35-45 minutes.

104. Plaintiff suffered damages, including psychological and emotional trauma, as a result of Defendant Sasse and Chase's negligent infliction of emotional distress against her.

WHEREFORE, Plaintiff Andrea Martinez prays this Court:

    A. Enter judgment in favor of Plaintiff and against Defendants;

    B. Award Plaintiff compensatory damages against Defendants;

    C. Award Plaintiff punitive damages against Defendants Sasse and Chase;

Case 5:19-cv-06135-FJG   Document 1   Filed 10/10/19   Page 13 of 14

D. Enter a declaration that defendants violated the Fourth Amendment rights of Plaintiff by using excessive force and subjecting Plaintiff to an unlawful search and seizure;

E. Award reasonable attorneys' fees and costs; and

F. Allow such other and further relief as the Court deems just and proper.

Plaintiff hereby demands a jury trial as to the Federal Constitutional Claims asserted in Counts I-II.

Respectfully submitted,

/s/ Anthony E. Rothert
ANTHONY E. ROTHERT, #44827
JESSIE STEFFAN, #64861
ACLU of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
Phone: (314) 652-3114
Fax: (314) 652-3112
trothert@aclu-mo.org
jsteffan@aclu-mo.org

GILLIAN R. WILCOX, #61278
ACLU of Missouri Foundation
406 West 34th Street, Suite 420
Kansas City, Missouri 64111
Phone: (816) 470-9938
gwilcox@aclu-mo.org

ATTORNEYS FOR PLAINTIFF