IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| ANDREA MARTINEZ,<br><br>    *Plaintiff*,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    *Defendant*. | No. 5:19-cv-06135-FJG |

**DEFENDANT UNITED STATES OF AMERICA'S**
**MOTION TO EXCLUDE STEPHANIE HAUPT, MD AS AN EXPERT WITNESS**
(***With Suggestions in Support Incorporated***)

    Defendant the United States of America moves the Court to enter an order excluding Stephanie Haupt, MD as an expert witness in this matter pursuant to: (1) Rule 26(a)(2) and Rule 37(c) of the Federal Rules of Civil Procedure and, in the alternative; (2) Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). The Court should exclude Dr. Haupt's opinion testimony. Plaintiff seeks to introduce Dr. Haupt's opinion testimony concerning treatment Dr. Haupt did not provide without Dr. Haupt timely providing the report required under Rule 26(a)(2)(B). Moreover, if Dr. Haupt is permitted to offer any treating opinions, she should not be permitted to offer opinions concerning the diagnosis or causation of any mental injury or mental condition. In support, the United States avers:

    1.    Plaintiff's remaining claims in this tort case consist of allegations of: (1) excessive force by two law enforcement officers; (2) false imprisonment by one law enforcement officer; and (3) negligent infliction of emotional distress by two law enforcement officers.

2. Plaintiff has made a treating expert disclosure of Dr. Stephanie Haupt as a person who is now Plaintiff's primary care physician at Meritas Health. Doc. 131. Plaintiff says Dr. Haupt is expected to provide expert testimony about the medical treatment a different doctor provided to Plaintiff "for the injuries inflicted on her by Officers Sasse and Chase," in 2018. Doc. 131.

3. Plaintiff states her actual treating physician at the relevant time in 2018, Dr. Jeffrey Luerding, M.D., died suddenly in January 2022. Thereafter, Dr. Haupt became Plaintiff's treating physician. Doc. 131.

4. Plaintiff proposes to designate Dr. Haupt "to present evidence related to Plaintiff's visit with Dr. Luerding, the causation of Plaintiff's injuries, and the care and treatment related to the concussion diagnosis and abrasions on her left foot and knee." Doc. 131.

5. Plaintiff filed a summary of the facts and opinions to which Dr. Haupt is expected to testify under seal. Plaintiff has not disclosed how any such facts or opinions relate to any treatment Dr. Haupt has personally provided to Plaintiff. *See* Docs. 130–31, 135. ████████████████████████████████████████████████

6. Plaintiff nevertheless asserts Dr. Haupt has not been retained and is not specially employed by Plaintiff to provide expert testimony in this action. Doc. 131.

7. Dr. Haupt did not prepare a written report under Federal Rule of Civil Procedure 26(a)(2)(B) and this Court's Amended Scheduling Order (Doc. 103 at 4 ("Standard discovery deadlines include submission of expert reports required by Rule 26(a)(2)(B), Fed. R. Civ. P., for all witnesses retained or specially employed to provide expert testimony or whose duties as the party's employee regularly involve giving expert testimony."). Doc. 131.

2

8. Plaintiff's designation of Dr. Haupt states:

> Dr. Jeffrey Luerding, M.D., was Plaintiff's primary care physician at Meritas Health until his sudden death on January 28, 2022. Dr. Stephanie A. Haupt, M.D. is now Plaintiff's primary care physician at Meritas Health. Dr. Leurding saw Plaintiff on July 3, 2018, as a follow up to her concussion diagnosis by Dr. DiBernardo. Dr. Haupt is expected to present evidence related to Plaintiff's visit with Dr. Luerding, the causation of Plaintiff's injuries, and the care and treatment related to the concussion diagnosis and abrasions on her left foot and knee. Supplemental information concerning the treatment to which Dr. Leurding provided and to which Dr. Haupt is expected to testify is provided in the document attached to this Disclosure as Exhibit D.

Doc. 131 at 2.

9. Tellingly, Plaintiff's designation of the scope of Dr. Haupt's opinion testimony is not limited to opinions Dr. Haupt formed for the purpose of Dr. Haupt's care or treatment of Plaintiff. *See id.*

10. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

11. The United States does not believe that a hearing is required for the Court to exclude Dr. Haupt as requested in this motion. Plaintiff's Rule 26(a)(2)(C) treating expert disclosure shows that Dr. Haupt has been specially employed for the purpose of providing opinions beyond those formed by her in her care and treatment of Plaintiff. Moreover, nothing suggests that Dr. Haupt is qualified for the purpose of offering opinion testimony concerning the diagnosis or cause of any mental injury or mental condition of Plaintiff. Similarly, there is no facial showing of reliability concerning any such opinions of Dr. Haupt. However, should the Court believe that a hearing or additional facts are necessary to determine the admissibility of some or all of Dr. Haupt's opinion testimony, the United States requests a *Daubert* hearing.

# DISCUSSION

Despite Plaintiff's assertions, Dr. Haupt is considered "specially employed to provide expert testimony in th[is] case[,]" as a matter of law, given the proposed scope of Dr. Haupt's testimony. *See Poster v. Marriott Int'l, Inc.*, No. 8:04CV534, 2005 WL 8175919, at *2 (D. Neb. Oct. 25, 2005)("[I]f a treating physician is asked to review medical records from another health care provider for the purpose of rendering opinion testimony, then the physician may be considered 'specially retained,' and therefore subject to the requirements of Rule 26(a)(2)(B), despite having also treated the patient."); *see also Lanham v. Sandberg Trucking, Inc.*, No. 4:06CV1179 HEA, 2010 WL 481046, at **1–2 (E.D. Mo. Feb. 4, 2010).

Dr. Luerding's unavailability, while tragic, did not prevent Plaintiff from designating a retained or specially employed expert to opine concerning Dr. Luerding's treatment, including Dr. Haupt. *See* Amended Scheduling Order, Doc. 103 (providing Plaintiff a supplemental date for expert reports more than six months after Dr. Luerding's death). However, any proposed expert who is asked to review Dr. Luerding's 2018 treatment records and render opinion testimony concerning Dr. Luerding's treatment in 2018 is considered "specially employed to provide expert testimony in the case" within the meaning of the Federal Rules of Civil Procedure and must provide a Rule 26(a)(2)(B) report. *Id. See also Lanham*, 2010 WL 481046, at **1–2.

### A. Dr. Haupt Should be Excluded as a Specially Employed Expert Who Did Not Prepare a Report

In *Navrude v. United States*, the district court described when a treating physician is considered "specially employed" and must prepare a Rule 26(a)(2)(B) report or face automatic exclusion under Rule 37(c):

> The starting point for determining whether a treating physician is subject to Rule 26(a)(2)(B) disclosures is the first sentence of the Rule itself, which requires the detailed, written disclosures "with respect to a witness who is retained or

specially employed to provide expert testimony." Courts draw a distinction between "hired guns" who examine a patient or a patient's records for purposes of litigation, and treating physicians whose opinion testimony "is based upon their personal knowledge of the treatment of the patient and not information acquired from outside sources for the purpose of giving an opinion in anticipation of trial." *Baker v. Taco Bell Corp.*, 163 F.R.D. 348, 349 (D. Colo. 1995); *accord Sprague v. Liberty Mutual Ins. Co.*, 177 F.R.D. 78 (D.N.H. 1998); *Zurba v. United States*, 202 F.R.D. 590 (N.D. Ill. 2001). A treating physician's opinions regarding causation, degree of permanent disability, and need for future medical care "are a necessary part of the treatment of the patient." *Id.*; *see Shapardon v. West Beach Estates*, 172 F.R.D. 415 (D. Haw. 1997).

> A key factor in determining whether a treating physician is subject to Rule 26(a)(2)(B) disclosures is "the scope of the proposed testimony." *Wreath v. United States*, 161 F.R.D. 448, 450 (D. Kan. 1995). To the extent a treating physician "limits his or her testimony to the patient's care and treatment, the physician is not 'specially retained' despite the fact that the witness may offer opinion testimony under Fed. R. Evid. 702, 703, and 705." *Starling v. Union Pacific R.R. Co.*, 203 F.R.D. 468, 477 (D. Kan. 2001) (citing *Wreath*, 161 F.R.D. at 450); *see Soll v. Provident Life & Acc. Ins. Co.*, 2002 WL 1461891 at *5 (E.D. La. July 5, 2002); *see also Hoover v. United States*, 2002 WL 1949734 (N.D. Ill. Aug. 22, 2002) (slip op.) (discussing history of amendments [of] Rule 26 in context of whether party seeking to depose treating physician must pay physician's "reasonable fee"). Thus, "a treating physician may testify about that which is related to and learned through actual treatment of the [patient], and which is based on his or her 'personal knowledge of the examination, diagnosis and treatment.' " *Id.* (quoting *Mangla v. Univ. of Rochester*, 168 F.R.D. 127, 139 (W.D.N.Y. 1996)); *accord Goeken v.. Wal–Mart Stores, Inc.*, 2001 WL 1159751 (D. Kan. Aug. 16, 2001) (citing *Wreath*). The trial court has the discretion to limit or prohibit a treating physician's opinion testimony that goes beyond information obtained during the physician's care and treatment of the patient, or if the court determines the physician was retained specifically to develop opinion testimony. *Id.*; *Soll*, *supra*.

*Navrude v. United States*, No. C01-4039-PAZ, 2003 WL 356091, at *7 (N.D. Iowa Feb. 11, 2003). "For example, if a treating physician is asked to review medical records from another health care provider for the purpose of rendering opinion testimony, then the physician may be considered 'specially retained,' and therefore subject to the requirements of Rule 26(a)(2)(B), despite having also treated the patient. *Brown v. Best Foods, Inc.*, 169 F.R.D. 385, 389 (N.D. Ala. 1996)(citing *Wreath*, 161 F.R.D. at 450)." *Poster*, 2005 WL 8175919, at *2.

5

Plaintiff has designated Dr. Haupt to testify about the care and treatment of another physician, not the care or treatment Dr. Haupt personally performed. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████

"[A] treating physician who is asked to review [] medical records of another provider in order to render an opinion about the propriety of that provider's care would likely be considered specially retained for trial. In part, courts look to whether the medical opinions, conclusions, and observations being offered by the treating physician necessarily played a role in his or her care and treatment of the plaintiff." *Richard v. Hinshaw*, No. CIV.A. 09-1278-MLB, 2013 WL 6709674, at *1 (D. Kan. Dec. 18, 2013) (citations omitted). "[T]he report requirement is based on the fact that a treating physician's expert testimony is limited to his or her observations, diagnosis, and treatment of a patient, i.e., what [the physician saw] and did and why [the physician] did it." *George v. Metropolitan Prop. and Cas. Ins. Co.*, No. 18-cv-01663-PAB-SKC, 2020 WL 70424, at *6 (D. Colo. Jan. 2, 2020) (internal quotation marks omitted). Thus, to the extent an opinion concerns the findings of other physicians, a report is required. *George*, 2020 WL 70424, at *6.

Plaintiff offers Dr. Haupt for the purpose of presenting opinions "related to Plaintiff's [July 3, 2018] visit with Dr. Luerding" and "the care and treatment related to the concussion diagnosis and abrasions on [Plaintiff's] left foot and knee." Doc. 131 at 2. Dr. Luerding—not Dr. Haupt—was the treating physician who formed opinions based on facts made known on July 3, 2018, regarding care and treatment related to the concussion diagnosis and abrasions on Plaintiff's left foot and knee. Dr. Haupt's opinions—made several years later—concerning the same are not opinions made based on Dr. Haupt's personal knowledge as the treating physician.

6

Evidently, Dr. Haupt did not become Plaintiff's primary care physician until 2022, more than three years after the treatment Plaintiff offers her to opine on. It strains credulity to believe that Dr. Luerding's 2018 concussion follow-up appointment and abrasion treatment "necessarily played a role in [Dr. Haupt's] care and treatment of the plaintiff." *Richard*, 2013 WL 6709674, at *1. ███████████████████████████████████████████████████

Moreover, Plaintiff offers Dr. Haupt for the purpose of presenting opinions, generally, on "the causation of Plaintiff's injuries." Doc. 131 at 2. Such opinions about causation of injuries in 2018 necessarily have "not played a role in [Dr. Haupt's] care and treatment of the plaintiff." *Richard*, 2013 WL 6709674, at *1. ███████████████████████████████████████████████████

Dr. Luerding—not Dr. Haupt—was the treating physician who, based on facts made known on July 3, 2018, formed treating opinions about causation and care and treatment related to Plaintiff's concussion diagnosis and abrasions on Plaintiff's left foot and knee. Dr. Haupt's opinions concerning the same are plainly not opinions made based on personal knowledge as the treating physician ███████████████████████████████████████████████████

**B.  Dr. Haupt's Opinions Concerning Mental Condition are Fundamentally Unsupported**

Even if Dr. Haupt is not excluded for failure to file a Rule 26(a)(2)(B) report, Plaintiff must still prove the admissibility of Dr. Haupt's testimony by a preponderance of the evidence. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (citing *Daubert*, 509 U.S. at 592).

Plaintiff has failed to make a facial showing that either of her primary care physicians—formerly Dr. Luerding and now Dr. Haupt—are qualified to offer any opinion Plaintiff may seek to introduce regarding the diagnosis or cause of any mental injury or condition, including a diagnosis of situational anxiety or the cause of such situational anxiety. Plaintiff has not presented any evidence suggesting that such physicians possess the knowledge, skill, experience, training, or education necessary to render an opinion concerning: (1) any diagnosis of Plaintiff's mental injury or condition; or (2) causation of Plaintiff's alleged mental injury or condition.

Based on the information available, Dr. Haupt's opinions (<u>which, hereinafter, includes Dr. Luerding's opinions which Dr. Haupt may relay</u>) regarding Plaintiff's alleged mental injury or condition are not reliable. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ "A treating physician's expert opinion on causation is subject to the same standards of scientific reliability that govern the expert opinions of physicians hired solely for purposes of litigation." *Brooks v. Union Pac. R. Co.*, 620 F.3d 896, 900 (8th Cir. 2010) (quoting *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1207 (8th Cir. 2000)).

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

---

[1] *Available at* https://www.ncbi.nlm.nih.gov/books/NBK207191/box/part1_ch3.box16/ (accessed March 2, 2023).

[redacted]

"Under Missouri law, emotional distress injuries are considered 'sophisticated' ones, outside the realm of lay understanding. Those injuries must be established through expert testimony . . . ." *Id.* (citing *Soper v. Bopp*, 990 S.W.2d 147, 157 (Mo. App. S.D. 1999)).

Here, there are many potential causes of any alleged mental condition or disorder of Plaintiff. Plaintiff has even at times endorsed different events as being the primary source of trauma. *See*, *e.g.*, Doc. 128-4, Report of Dr. Giakas at PDF pp. 10 ("Very early in the IME, I asked Ms. Martinez what the most traumatic aspect of the entire experience was, and she stated that her 'kid's stress' was the 'biggest deal' for her. . . . I asked her again in this different context what the most 'traumatic' aspect of the incident was. She said that the worst part was when Officer Chase 'lied' to FPS that she was 'trespassing.' She stated that Officer Chase told [FPS] to 'come arrest me.' She added, 'I felt like I was in Russia.'"); 46 ("Ms. Martinez's current reported symptoms are likely due to the ongoing stress of her high-profile lawsuit. Ms. Victoria Ford, LMFT, stated in her 12/20/2020 treatment summary report that her client's symptoms 'will

9

fully resolve' 'with completion likely to occur 3-6 months past the end of the associated court involvement." This is a very clear acknowledgement of the high emotional impact that the legal process is having on Ms. Martinez, having no relationship to PTSD from the incident itself. . . . Ms. Galicia is asked in her deposition 11/22/22, 'And did she express to you any emotional distress that she experienced related to the lawsuit filing?' Her response is, 'She was very, very nervous and anxious about it, yes' (p.199).").

Other likely causes for Plaintiff's emotional distress include but are not limited to: (1) distress from embarrassment, including distress at the Netflix documentary not going how she had planned (Dr. Giakas Report at 25, 41); (2) distress from seeing individuals she was emotionally invested in detained or removed from the country (*Id.* at 34); (3) distress from work-life imbalance (Dr. Giakas Report at 48); (4) distress from a different mental condition such as Major Depressive Disorder or a personality disorder (Dr. Giakas Report at 40–42); (5) distress associated with actual or potential legal developments before and after the filing of this action (*Id.* at 46, 48); (6) distress associated with publicity (Dr. Giakas Report at 46 ("[P]eople want to kill people doing my job[.]")); and (7) parenting stressors (Dr. Giakas Report at 10–11, 14, 46).

[redacted]

WHEREFORE, Defendant the United States of America moves the Court to enter an order excluding Dr. Stephanie Haupt as an expert witness in this matter and granting the United States such other and further relief as is just and proper.

Date: March 3, 2023                                    Respectfully submitted,

                                                 Teresa A. Moore
                                                 United States Attorney

                                 By     ***/s/ Alan T. Simpson***
                                                 Alan T. Simpson
                                               Missouri Bar No. 65183
                                               Assistant United States Attorney
                                               Western District of Missouri
                                               400 East Ninth Street, Suite 5510
                                               Kansas City, Missouri 64106
                                               Telephone: (816) 426-3130
                                               Facsimile: (816) 426-3165
                                               Email: alan.simpson@usdoj.gov
                                               ATTORNEY FOR THE UNITED STATES